FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 NOV 12 P 4: 11

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

ANGELA FORD, *et al.*,

Plaintiffs,

v.   Case No.: GJH-11-3039

UNITED STATES, *et al.*,

Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendants' Joint Motion in Limine to Exclude Evidence of Projected Past Expenses Not Actually Incurred, ECF No. 134, Defendants' Joint Motion in Limine to Exclude Certain Expert Testimony of Estelle Davis, Ph.D, and Richard J. Lurito, Ph.D, Regarding Plaintiff Angela Ford Hysmith's Claim for Loss of Future Earning Capacity, ECF No. 135, Defendants' Joint Motion in Limine to Exclude Expert Testimony and Medical Literature, ECF No. 137, and Defendants' Motion to Seal Defense Exhibits, ECF No. 150.[1] The Court will also address an oral Motion in Limine made by Plaintiff's Counsel at the Motions Hearing held on November 2, 2015, seeking exclusion of Plaintiff Angela Ford's Virginia

---

[1] The Court heard argument on these and other Motions at a hearing held on November 2, 2015 ("Motions Hearing"), during which the Court resolved multiple pending Motions. Though informally, Defendants seek the Court's reconsideration of an issue resolved during the Motions Hearing, namely, whether Plaintiffs may read the deposition testimony of two witnesses, Drs. Harper and Fasano, into the record at trial in lieu of their live testimony. See ECF No. 180. The Court declines to reconsider the decision announced during the Motions Hearing. With respect to Defendants' additional request that Dr. Harper be permitted to testify during Plaintiffs' case on December 7, 2015, Plaintiff's Counsel indicated at the Motions Hearing that he is willing to accommodate Dr. Harper testifying out of turn. Assuming the Parties are indeed in agreement, the Court, of course, has no qualms with Dr. Harper testifying on the date on which she is available.

driver's license application.[2] The Court assumes knowledge of the pertinent facts and procedural history and will discuss only those facts that are relevant to the resolution of these Motions.

## I. MOTION TO EXCLUDE EVIDENCE OF PAST EXPENSES NOT ACTUALLY INCURRED

Plaintiffs have designated Estelle Davis, Ph.D, CRC ("Dr. Davis") as an expert witness who will offer opinions regarding Ms. Ford's future care needs resulting from Defendants' alleged negligence. On March 26, 2012, Dr. Davis produced a report and life care plan outlining what she believed were Ms. Ford's future care needs. *See* ECF No. 134-3. That plan, organized into a chart entitled "Future Care Needs for Angela Ford," included items of care beginning on the date of the report in 2012 and extending into the future, with some items projected over Ms. Ford's lifetime. ECF No. 134-3 at 11–12. Dr. Davis subsequently updated her life care plan in a report dated May 9, 2012. *See* ECF No. 134-4. Defendants now seek to exclude from evidence portions of Dr. Davis's life care plan that Ms. Ford has not utilized since the date of Dr. Davis's report until trial. ECF No. 134. The Court will grant Defendants' Motion.

Fed. R. Evid. 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 403, however, provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury. . . ." Given passage of time since Dr. Davis created the "future care needs" report, the relevance of the exhibit has diminished and, as currently constructed, would confuse the jury. Ms. Ford has not pointed the Court to any authority for the

---

[2] This issue first arose in the Parties' briefing of Plaintiffs' Motion in Limine or for a Protective Order to Preclude Second Deposition of Susan Brown, MD, ECF No. 132, which the Court resolved during a Telephone Status Conference held on October 28, 2015. *See* ECF No. 171. Although Plaintiffs have not filed a motion on the docket seeking its exclusion, the Court will treat Plaintiff's Counsels representations at the Motions Hearing as an oral Motion in Limine to exclude that evidence.

2

proposition that she would be entitled to recover damages for expenses that an expert projected would be necessary but that were ultimately not incurred as of the time of trial. *See* Maryland Civil Pattern Jury Instructions § 10:2 (5) (4th Ed. 2013) ("In an action for damages in a personal injury case, [the jury] shall consider the following: . . . (5) The medical and other expenses reasonably and necessarily **incurred in the past and that with reasonable probability may be expected in the future . . . .**" (emphasis added)). Thus, Plaintiff shall remove or redact references to items which now reflect projected past expenses not actually incurred. That includes, but is not limited to, references to four neurology visits per year from 2012 through 2015 and pre-school costs from September 2012 through August 2014. Plaintiff may separately introduce such expenses, if any, incurred in this regard through separate evidence establishing past expenses. Such expenses, however, do not belong in a chart—or in any testimony—labeled as "Future Care Needs." In accordance with the ensuing Order, Plaintiff shall provide a revised version of the chart prior to trial.

## II. MOTION TO EXCLUDE EVIDENCE OF EXPERT TESTIMONY REGARDING LOSS OF FUTURE EARNING CAPACITY

Defendants next seek to exclude expert testimony regarding Ms. Ford's loss of future earning capacity. ECF No. 135. By way of background, Ms. Ford's academic and employment history is marked with periods of inactivity. She attended high school through the tenth grade, receiving grades of "Cs" and "Ds" before dropping out, though she later received a high school equivalency certificate upon successful completion of General Educational Development ("GED") tests. ECF No. 135-2 at 6–7. She later worked as a waitress before taking nursing assistant courses at Sinclair Community College, where she obtained a nurse's aide assistant certificate, as well as a pediatric patient care assistant certificate. *Id.* at 7–8, 10, 14. She did not, however, sit for any Ohio state licensing tests. *Id.* at 8. Ms. Ford then began working at Dayton's

Children Hospital as a patient care assistant, alternating between full-time and part-time employment from 2002 through 2004. *Id.* at 14–15. In 2004, Ms. Ford took and passed the entrance exam to enter a nursing program at RETS Technical College, but she did not enter the program. *Id.* at 11. She was then unemployed for a period of time before beginning work at a drugstore, holding a clerical position. *Id.* at 15. In 2006, after relocating to Maryland due to her husband's United States Air Force assignment, Ms. Ford worked as a cashier at a grocery store. *Id.* at 16. She stopped working at the grocery store in 2007, when her husband was deployed to Qatar, and she has not been employed since then. *Id.* A number of the gaps in her educational and employment history were explained by certain family and personal complications, for instance, leaving Sinclair Community College because of the difficulties of balancing work and being a single mother, and leaving certain jobs in deference to her husband's Air Force responsibilities. *Id.* at 12, 16.

Plaintiffs have designated Dr. Davis as an expert witness who would offer an opinion regarding the impact of Ms. Ford's alleged injuries on her future employability and earning capacity. Dr. Davis presented various scenarios for Ms. Ford's future earning capacity. ECF No. 135-4 at 9. One scenario assumed that Ms. Ford would have earned a degree as a Licensed Practical Nurse ("LPN") and would have been employed as an LPN by the fall of 2016. *Id.* Another scenario assumed that Ms. Ford would have pursued an Associate of Arts ("AA") degree and would have been employed by late 2017 or early 2018, earning wages "comparable to someone with that level of education." *Id.* A third scenario assumed that Ms. Ford would have reentered the workforce without any additional education in the fall of 2015—the year her youngest child turned six years old. *Id.* Dr. Davis opined that Ms. Ford would have likely continued to work until normal retirement age under all three scenarios. *Id.* Based on these

4

predictions, another of Plaintiffs' experts, Richard Lurito, Ph.D ("Dr. Lurito"), an economist, projected Ms. Ford's future lost earnings over her working life, with varying results based on each of Dr. Davis's three proposed scenarios. *See* ECF No. 135-5.

Defendants argue that an expert's conclusion that Ms. Ford would have obtained either an LPN or an AA degree is wholly speculative because, "[b]esides Ms. Ford's subjective desire to obtain an LPN degree and license, there is absolutely no evidence in the record to establish that either of these educational scenarios would be reasonably certain as opposed to only a 'mere possibility.'" ECF No. 135 at 5. In support of this point, Defendants rely on *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996), which stated that "[w]here lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Id.* at 21 (citing cases). In that case, the United States Court of Appeals for the Second Circuit concluded that the District Court erred by admitting expert testimony regarding the plaintiff's lost earnings based on assumptions that the plaintiff would work forty hours per week, fifty-two weeks per year, with fringe benefits and regular pay increases. *Id.* at 22. Prior to his injury, the plaintiff in *Boucher* had never had regular employment, but rather worked sporadically and seasonally during his entire adult life, never regularly receiving pay increases or fringe benefits. The Court explained that "nothing of probative value—such as a change in family responsibilities, or the acquisition of a new set of skills" accounted for the expert's assumptions that the plaintiff would suddenly be employed full-time in an occupation where he would receive regular pay increases or benefits. *Id.*

Here, in contrast, there *are* facts of probative value explaining Ms. Ford's gaps in employment history, namely, personal and family circumstances. Also, that Ms. Ford took

5

reasonable steps, prior to her injury, to pursue a career in nursing, including obtaining a nurse's aide assistant certificate and thereafter working as a patient care assistant, provides objective evidence demonstrating a logical progression that supports Dr. Davis's belief that Ms. Ford would have, if not for her injury, returned to school to obtain her LPN and pursue her goal of becoming a nurse. Defendants' objections—regarding the gaps in Ms. Ford's employment history and her poor grades in high school and community college—go toward the weight, rather than the admissibility, of Dr. Davis's testimony and may appropriately be inquired upon during cross-examination. To hold otherwise would be to freeze the future earning potential of a 33-year-old woman at the point at which her injury was suffered. That would be patently unfair given the objective evidence.

What is not supported by the record, however, is Dr. Davis's assumption that Ms. Ford might have obtained an AA degree. And, in fact, Ms. Ford does not seem to seriously contest this point. *See generally* ECF No. 142. As Defendants indicate, there is no evidence in the record that Ms. Ford ever entertained the notion of obtaining an AA degree. Accordingly, Dr. Davis will not be permitted to testify regarding any potential earning scenario predicated on Ms. Ford obtaining that degree, nor will Dr. Lurito be permitted to testify regarding Ms. Ford's projected lost earnings based on that scenario. In that regard, Defendants' Motion will be granted, but it will be denied in all other respects.

### III. MOTION TO EXCLUDE EXPERT TESTIMONY AND MEDICAL LITERATURE

Defendants also seek to exclude certain expert testimony from one of Plaintiffs' experts, Dr. Aaron Caughey, and to exclude from evidence articles on which Dr. Caughey and Dr. Lisa Morikado relied that were published after the date of the alleged malpractice in this case. ECF No. 137.

With respect to Dr. Caughey's testimony, Defendants seek to exclude testimony that Ms. Ford did not have a condition known as cerebral angiopathy. In response, Plaintiffs renewed an earlier motion in limine seeking to exclude testimony by Defendants' expert, Dr. Baha Sibai, that might suggest that Dr. Sibai could diagnose Ms. Ford with cerebral angiopathy. ECF No. 145 at 4–6. At the Motions Hearing, however, counsel for both Parties agreed that their experts will testify consistently with their reports and will not expand the scope of their testimony beyond that which was disclosed during discovery. Accordingly, in light of the Parties' agreement, the Court will deny this portion of Defendants' Motion as moot.

With respect to the medical literature, Defendants seek to exclude several categories of articles: (1) an article offered during the deposition of Dr. Morikado, cited as being supportive of her opinion of the applicable standard of care, which postdated the date of Ms. Ford's injury; (2) postdated articles relied on by Dr. Caughey that were written by Defendants' expert, Dr. Sibai; and (3) postdated articles relied on by Dr. Caughey that he cited as being supportive of his opinion of the applicable standard of care. The Court will address each category in turn.

With respect to the literature offered by Dr. Morikado, Ms. Ford's counsel has agreed to use a previous edition of the textbook in question which predates the issues in this case. In this regard, the Court will grant Defendants' Motion to exclude the postdated literature. Defendants will be ordered, however, to review and compare the predated literature with that referred to during Dr. Morikado's deposition and inform the Court within seven days of this Order whether Defendants have an additional objection to Plaintiffs' use of that predated literature.[3]

Next, with respect to literature relied upon by Dr. Caughey which was authored by Defendants' expert, Dr. Sibai, the Court will permit Plaintiffs to use that literature for cross-

---

[3] The Court issued a similar Order orally during the Motions Hearing but had not provided a deadline.

7

examination of Dr. Sibai, and, in that regard, Defendants' Motion to exclude that literature will be denied.

And, finally, the Court will grant Defendants' Motion with respect to the postdated articles which Plaintiffs seek to admit substantively to establish the standard of care applicable at the time of the alleged negligence at issue in this case. Plaintiffs contend that, under Fed. R. Evid. 703, such articles are admissible simply because Dr. Caughey relied on them in formulating his opinion. That Rule provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury **only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect**.

Fed. R. Evid. 703 (emphasis added). There seems to be no dispute that the relevant inquiry regarding the standard of care in a medical malpractice case asks whether the defendant's actions were "in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities **at the time of the alleged act giving rise to the cause of action**." Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(c)(1) (emphasis added). Allowing the admission of articles that postdate the "act giving rise to the cause of action" to substantively establish the standard of care in effect at that time would only cause confusion. Although the Court will permit Dr. Caughey to testify as to his opinion of the relevant standard of care, and he will be permitted to testify regarding these and any other articles upon which he relied in formulating his opinion, Plaintiffs have failed to demonstrate how any probative value in admitting the articles substantively would outweigh their prejudicial effect.

## IV. MOTION TO SEAL DEFENSE EXHIBITS

Defendants also move to seal exhibits appended to their oppositions to some of Plaintiffs' Motions in Limine. ECF No. 150. The exhibits they wish to have sealed are medical exhibits and "records relating to the Plaintiffs' divorce and separation of property as a result of the divorce." *Id.* In determining whether to grant a motion to seal, the Court must consider whether any compelling government interest necessitates denying the public the right to access court documents. *See Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). In *Public Citizen*, the United States Court of Appeals for the Fourth Circuit addressed the District Court's decision to seal, *inter alia*, the parties' summary judgment motions and exhibits attached thereto. *Id.* at 267. The Court observed, in reversing the lower court's decision to seal the record, "that summary judgment is an adjudication that serves as a substitute for trial." *Id.* (internal quotation marks and citation omitted). Here, the Court will grant Defendants' Motion to Seal exhibits attached to the Motions in Limine, but the Parties are forewarned that the Court is unlikely to grant motions to seal trial exhibits related to Plaintiffs' separation and divorce. Although there may be a compelling interest in shielding Ms. Ford's medical records from public view, *see Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011) (noting that sensitive medical information may be sealed so long as scope of request is not too broad), absent further representation from the Parties, the Court does not see any compelling interest necessitating that documents relating to Plaintiffs' divorce be sealed from the record at trial. Indeed, divorce proceedings are typically matters of public record.

## V. MOTION TO EXCLUDE MS. FORD'S VIRGINIA DRIVER'S LICENSE APPLICATION

Finally, at the Motions Hearing held on November 2, 2015, Plaintiff's Counsel moved to exclude from evidence Ms. Ford's Virginia driver's license application on the ground that it is

privileged material. *See* footnote 2 of this Memorandum Opinion and Order. Defense Counsel represents that, on Ms. Ford's application, in response to the question of whether she had ever suffered from a seizure, blackout, or loss of consciousness, Ms. Ford answered "no." Defendants seek to use the application at trial substantively, as a party admission, and as impeachment evidence. Although "personal information," including information required on a Virginia driver's license application, is deemed privileged,[4] Defense Counsel contends that Ms. Ford's application was released pursuant to a statutory exception that permits the Commissioner of the Virginia Department of Motor Vehicles to release such information to the federal government. In its letter to the Court addressing this issue, Defendants quote a portion of the exception, which, divorced from its context, supports Defendants' position that the document may be disclosed for the general purpose of allowing the federal government to "carry out its official functions." *See* ECF No. 176. But the full provision reads as follows:

> **On the request of any federal, state, or local governmental entity**, local government group self-insurance pool, law-enforcement officer, attorney for the Commonwealth, court, or the authorized agent of any of the foregoing, **the Commissioner shall** (i) **compare personal information supplied by the governmental entity**, local government group self-insurance pool, law-enforcement officer, attorney for the Commonwealth, court, or the authorized agent of any of the foregoing, **with that contained in the Department's records and, when the information supplied by the governmental entity**, local government group self-insurance pool, law-enforcement officer, attorney for the Commonwealth, court, or the authorized agent of any of the foregoing, **is different from that contained in the Department's records, provide the governmental entity**, local government group self-insurance pool, law-enforcement officer, attorney for the Commonwealth, court, or the authorized agent of any of the foregoing, **with correct information as contained in the Department's records** and (ii) **provide driver and vehicle information in the form of an abstract of the record showing all convictions, accidents, driver's license suspensions or revocations, and other appropriate information as the**

---

[4] *See* Va. Code Ann. § 46.2-323(B) (driver's license application must include, *inter alia*, applicant's "full legal name, year, month, and date of birth, social security number, sex, and residence address of the applicant . . ."); Va. Code Ann. § 2.2-3801 (defining "personal information" as "all information that . . . describes, locates or indexes anything about an individual including, but not limited to, his social security number, driver's license number, agency-issued identification number . . .").

> **governmental entity**, local government group self-insurance pool, law-enforcement officer, attorney for the Commonwealth, court, or the authorized agent of any of the foregoing, **may require in order to carry out its official functions**. The abstract shall be provided free of charge.

Va. Code Ann. § 46.2-208(B)(9) (emphasis added). Under a plain reading of this statutory provision, it appears that Ms. Ford's driver's license application should not have been disclosed to Defendants unless a comparison by the Commissioner led to a conclusion that the records differed from information provided by the Government. What has been left unclear at this juncture is whether such a comparison was requested and made prior to disclosure. Certainly, the result of the document production, *i.e.*, Ms. Ford's indication that she has never had a seizure, would be different from the information then in the Government's possession. Thus, the Government shall indicate within three days of this Order whether such a comparison was requested by the Government and made by the Commissioner prior to disclosure, as required by § 46.2-208(B)(9).

* * *

Accordingly, it is hereby **ORDERED** that:

1. Defendants' Joint Motion in Limine to Exclude Evidence of Projected Past Expenses Not Actually Incurred, ECF No. 134, is **GRANTED**. Plaintiff is **ORDERED** to remove or redact references to items which now reflect projected past expenses not incurred and further **ORDERED** to submit a revised version of a projected earnings chart prior to trial;

2. Defendants' Joint Motion in Limine to Exclude Certain Expert Testimony of Estelle Davis, Ph.D, and Richard J. Lurito, Ph.D, Regarding Plaintiff Angela Ford Hysmith's Claim for Loss of Future Earning Capacity, ECF No. 135, is **GRANTED**, in part, and **DENIED**, in part;

3. Defendants Joint Motion in Limine to Exclude Expert Testimony and Medical Literature, ECF No. 137, is **GRANTED**, in part, and **DENIED**, in part. Defendants are **ORDERED** to review the predated medical literature offered by Plaintiffs and inform the Court within seven days of this Order whether Defendants have an additional objection to Plaintiffs' use of such literature;

4. Defendants' Motion to Seal Defense Exhibits, ECF No. 150, is **GRANTED**; and

5. Defendants are **ORDERED** to submit to the Court, within three (3) days of this Order, a letter indicating whether Va. Code Ann. § 46.2-208(B)(9) was complied with to permit disclosure of Plaintiff's Virginia driver's license application.

Dated: November 12, 2015

/S/
GEORGE J. HAZEL
United States District Judge